## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ROBERTA LINDENBAUM**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**DINO PALMIERI SALON, INC.**, an Ohio corporation,<br><br>*Defendant*. | Case No. :<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Roberta Lindenbaum ("Lindenbaum" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Dino Palmieri Salon, Inc. ("Dino Palmieri") to: (1) stop Defendant's practice of sending unsolicited text messages using an "automatic telephone dialing system" ("ATDS") to cellular telephones without prior express consent; (2) stop Defendant from sending unsolicited text messages to consumers who are registered on the National Do Not Call Registry; and (3) obtain redress for all persons injured by its conduct. Plaintiff Lindenbaum, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.      Plaintiff Roberta Lindenbaum is a natural person and resident of Cuyahoga County, Ohio.

2.      Defendant Dino Palmieri is a corporation organized and existing under the laws of the State of Ohio. Defendant is headquartered in, and conducts business in, this District.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

4.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains its principal place of business in this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff, Defendant, and a substantial portion of the putative Classes reside within this District.

## COMMON ALLEGATIONS OF FACT

6.      Defendant Dino Palmieri operates 10 full service hair and beauty salons in Northeast Ohio.

7.      One of the biggest challenges facing salons is optimizing the utilization of both their workers and salon spaces – in other words keeping the salons full of paying customers.

2

8.      Most salons, including those operated by Defendant, obtain clients in two ways – through advance booked appointment or clients who walk-in to a salon seeking services.

9.      Salons have a strong preference for advance scheduled client appointments, as it allows them to forecast demand and accurately staff their facilities.

10.     But salons face a substantial problem with scheduled appointments – clients that fail to show up for their appointment or show up later than their scheduled time. If the appointment cannot be filled by a walk-in client, the salon loses revenue.

11.     In an effort to both market its salons and the services offered by those salons to the public, and to maximize revenue by limiting missed or late appointments, Dino Palmieri sends text messages to clients' cellular telephones.

12.     Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated unsolicited text messages to consumers' cellular telephones—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

13.     As explained by the Federal Communications Commission ("FCC")[1], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

---

[1] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

14.     Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send text messages to consumers' cellular telephone numbers.

**A.  <u>Bulk SMS Marketing</u>**

15.     In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk advertisement and/or solicitation messages cheaply.

16.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

17.     Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

18.     When an SMS message call is successfully made, the recipient's cellular telephone alerts him or her that a message has been received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular

telephones, including SMS messages, may be received by the called party instantaneously virtually anywhere worldwide.

**B. Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

19. Defendant sends text messages to consumers' cellular telephones in an attempt to solicit and retain business.

20. In sending these promotional text messages, Defendant takes no steps to acquire the oral or written prior express consent of the Plaintiff, or the other members of the classes who received the unsolicited text messages.

21. Defendant made, or had made on its behalf, the same (or substantially the same) unsolicited text message calls *en masse* to hundreds or thousands of cellular telephone numbers owned or utilized by class members over a period of many years.

22. In sending the unsolicited text messages at issue in this Complaint, Defendant utilized an ATDS. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

23. For Defendant to solicit consumers to schedule salon services, Defendant has resorted to sending text messages to consumers who have not consented to them.

24.     In 2011, Defendant installed Milano Software's "Spa Version" and "Beauty Salon Edition" to manage inventory, client relations, and marketing.[2]

25.     In discussing the Milano Software implantation, Defendant specifically noted that they were:

> also looking forward to implementing text and email appointment confirmations in the near future.
> …
> we believe the addition of automated appointment reminders will help improve our client relationships…This convenient service will also free up time for our front desk coordinators, thus providing the best customer service for our guests.[3]

26.     Defendant made good on their promise to implement a text messaging program – utilizing the spa and salon product offered by Demandforce, Inc.

27.     Demandforce offers a range of marketing focused products to salons, medical offices, and other small businesses.

28.     Specifically, Demandforce offers a platform that allows salons and spas to send automated appointment reminder and confirmations, noting that a customer, such as Defendant can "Reduce no-shows and free up valuable time and resources by **automating appointment reminders and confirmations**," and that the Demandforce system can "**Automatically send a day-of text message** so your client doesn't forget about you."[4]

---

[2] *See* http://www.milanosoftware.com/sites/default/files/assets/Dino-Palmieri-case-study.pdf and http://www.salontoday.com/article/23990/dino-palmieri-a-software-conversion-case-study

[3] *Id.*

[4] http://www.demandforce.com/product/appointment-reminder/ (emphasis added)

29.     Indeed, screenshots of the service offered by Demandforce, and utilized by Defendant reveal that automatic sending of text messages is the default protocol, and that manual, or one-off sending is not:



5

30.     Demandforce touts their service as assisting salons, such as those operated by Defendant, in maximizing revenue by minimizing no-shows:



6

---

[5] *Id.*

31.     Defendant was, and is aware, that its unsolicited text messages were and are being made without the prior express consent of the text message recipients.

32.     Indeed, the terms and conditions that Dino Palmieri agreed to in order to use the Demandforce service to send the text messages described herein specifically state:

> TCPA regulations **require that companies obtain consent from consumers prior to sending any sort of text or automated telephone messages**.
> …
> Messages with any sort of marketing content require that your patient provide you with "express written consent", which may be obtained in an electronic format. The prior express written consent must identify that you may be sending text messages related to your goods and services using automated technology and that your customer affirmatively agrees to receive such messages. The **prior express consent must include your customers' written or electronic acceptance**. Specifically, by entering a cell phone number into your management system or the Demandforce system and not opting such cell phone out of the Demandforce text message feature, you are directing Demandforce to automatically send text message reminders and other communications to such cell phone and certifying that the user of such cell phone consents to the receipt of those messages.[7]

33.     Defendant knows, or is reckless in not knowing, that its SMS text messages to these cellular subscribers are unauthorized as it fails to obtain prior express written consent before sending those text messages to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

34.     Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those

---

[6] http://www.demandforce.com/industries/salon-and-spa/
[7] http://www.demandforce.com/terms-conditions/ (emphasis added)

numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

35.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

36.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[8] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[9]

37.     By sending the unsolicited text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

---

[8] *See e.g.* http://www.dncsolution.com/do-not-call.asp;
http://www.donotcallprotection.com/do-not-call-compliance-solutions-1;
http://www.mindwav.com/tcpa_compliance_solution.asp;
[9] https://www.neustar.biz/services/tcpa-compliance

38.     In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of actual or statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF ROBERTA LINDENBAUM

39.     Plaintiff Lindenbaum is the owner/possessor of a cellular telephone number ending in -2902 and has been for a considerable amount of time.

40.     Plaintiff registered her cellular telephone number on the National Do Not Call Registry on February 1, 2006.

41.     On Tuesday, October 4, 2016 at 8:02 am, Plaintiff received an unsolicited text message from Dino Palmieri on her cellular telephone from 469-789-3891. The October 4, 2016 text message stated, "Dino Palmieri Salon & Spa- La Place: Liam's appt is today, Tue, Oct 4 at 10:00 AM. Reply HELP for help. STOP=End msgs .(216).765-1400".

42.     On Saturday, February 4, 2017 at 9:02 am, Plaintiff received another unsolicited text message from Dino Palmieri on her cellular telephone from 469-789-3891. The February 4, 2017 text message stated, "Dino Palmieri Salon & Spa- La Place: GAVIN's appt is today, Sat, Feb 4 at 11:30 AM. Reply HELP for help. STOP=End msgs .(216).765-1400"

43.     The following is a screenshot taken from Plaintiff's cellular telephone displaying the aforementioned messages:



44.     The text messages at issue were unquestionably sent by Defendant and were sent using the Demandforce automated text messaging system.

45.     Specifically, the text messages at issue clearly identify Defendant as the sender and provide the phone number of Defendant's salon located at La Place in Beachwood, Ohio.

46.     As demonstrated by the two screenshots below, text messages sent **to** the 469-789-3891 number utilized by Defendant result in a reply back from a different number but clearly identify Demandforce as the system being used to send the text messages at issue and provide a toll-free number, 800-220-1136, that is listed as a customer service number for Demandforce[10]:

---

[10] *See* https://www.demandforce.com/support/





47.     While Plaintiff does have a relationship with Defendant, she has never requested that Defendant send text messages to her. Simply put, Plaintiff has never provided her prior express written consent to Defendant to send text messages to her.

48.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

49. By sending unauthorized text messages as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the text messages disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

50. In order to redress these injuries, Plaintiff, on behalf of herself and the other members of the Classes, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

51. On behalf of the Classes, Plaintiff seeks an injunction requiring Dino Palmieri to cease all unsolicited text messaging activities, and to further cease placing calls or sending text messages to phone numbers listed on the National Do Not Call Registry, and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

52. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages; (2) to the person's cellular telephone number; and (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to send automated text messages to the Plaintiff.

**Do Not Call Registry Class:** All persons in the United States who
(1) Defendant (or a third person acting on behalf of Defendant)
called more than one time on his/her cellphone; (2) within any 12-
month period (3) where the cellphone number had been listed on
the National Do Not Call Registry for at least thirty days; (4) for
the purpose of selling Defendant's products and services; and (5)
for whom Defendant claims it obtained prior express consent in the
same manner as Defendant claims it obtained prior express consent
to call the Plaintiff.

53. The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its

parents have a controlling interest and their current or former employees, officers and

directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely

request for exclusion from the Classes; (5) the legal representatives, successors or assigns

of any such excluded persons; and (6) persons whose claims against Defendant have been

fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the

Class definitions following appropriate discovery.

54. On information and belief, there are hundreds, if not thousands of

members of the Classes such that joinder of all members is impracticable.

55. There are several questions of law and fact common to the claims of

Plaintiff and the Classes, and those questions predominate over any questions that may

affect individual members of the Classes. Common questions for the Classes that may be

answered in a single stroke include, but are not necessarily limited to the following:

(a) whether Defendant's conduct constitutes a violation of the TCPA;

(b) whether Defendant utilized an automatic telephone dialing system to
send text messages to members of the Classes;

14

(c) whether Defendant systematically sent text messages to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(d) whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

(e) whether Defendant obtained prior express written consent to sending text messages to members of the Classes; and

(f) to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

56.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellular telephones, as a result of the transmission of the unsolicited text messages alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting unsolicited text messages. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like all members of the Classes, received unsolicited text messages from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of herself and all absent members of the Classes.

57.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interests antagonistic to the interests of other members of the proposed Classes and is subject to no unique

defenses. Plaintiff has retained counsel with substantial experience in prosecuting

complex litigation and TCPA class actions. Plaintiff and her counsel are committed to

vigorously prosecuting this action on behalf of the members of the Classes and have the

financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to

those of the other members of the Classes.

58.     The suit may be maintained as a class action under the Federal Rule of

Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on

grounds generally applicable to the Classes, thereby making appropriate final injunctive

relief. Defendant has acted and fails to act on grounds generally applicable to the Plaintiff

and the other members of the Classes in transmitting the unsolicited text messages at

issue, requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the Classes.

59.     In addition, this suit may be maintained as a class action under Federal

Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available

methods for the fair and efficient adjudication of this controversy. Absent a class action,

most members of the Classes would find the cost of litigating their claims to be

prohibitive, and will have no effective remedy. The class treatment of common questions

of law and fact is also superior to multiple individual actions or piecemeal litigation in

that it conserves the resources of the courts and the litigants, and promotes consistency

and efficiency of adjudication. The claims asserted herein are applicable to all customers

throughout the United States who received an unsolicited text message from Defendant.

The injury suffered by each individual class member is relatively small in comparison to

the burden and expense of individual prosecution of the complex and extensive litigation

necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

60.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

61.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

62.     Defendant and/or its agent transmitted unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

63.     These unsolicited text messages were made *en masse* without human intervention and without the prior express written consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such unsolicited text messages.

64.     At no time did Defendant obtain prior express written consent from the Plaintiff and the other members of the Autodialed No Consent Class to receive text messages. Also, at no time did Defendant obtain prior express consent through a written agreement that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive text messages was not a condition of the purchase of any property or service.

65.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

66.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do No Call Registry Class)**

67.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

68.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call[11] within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

69.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

---

[11] Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *See also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

71.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entiles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

72.　　Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to cellular telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

73.　　Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any do not call list, and by failing to record and honor do not call requests.

74.　　Defendant sent more than one unsolicited text message to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such text messages. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive text messages from Defendant, and/or Defendant does not have a current record of consent to send telemarketing messages to them.

75.　　Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

76.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

77.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Roberta Lindenbaum, individually and on behalf of the Classes, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Lindenbaum as the representative of the Classes and appointing her attorneys as Class Counsel;

2.     An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

3.     An injunction requiring Defendant to cease all unsolicited text messaging and to honor opt out requests, and otherwise protect the interests of the Classes;

4.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

5.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

6.      An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

7.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

8.      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**ROBERTA LINDENBAUM**, individually and on behalf of a Class of similarly situated individuals

Dated: May 11, 2017                        By:   /s/Adam T. Savett
                                                One of Plaintiff's Attorneys

Adam T. Savett
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative Classes

23